```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON


WILLIAM A. LARUE,

        Plaintiff,

v.                                  Case No. 2:09-cv-00395

JIM RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,

        Defendant.
```

### PROPOSED FINDINGS AND RECOMMENDATION

On April 22, 2009, Plaintiff filed a Complaint under 42 U.S.C. § 1983 challenging the constitutionality of two disciplinary rules of the West Virginia Division of Corrections (docket sheet document # 1). Specifically, Plaintiff alleges that Rule 2.11 concerning contraband and Rule 2.29 concerning the making of contracts are unconstitutionally vague as written. (Id.) This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On July 23, 2009, Defendant filed a Motion to Dismiss Complaint (# 22). On July 29, 2009, Plaintiff filed a Motion for Default Judgment (# 24). Both motions are pending. The undersigned will first address the Motion for Default Judgment,

before turning to Defendant's Motion to Dismiss.

## ANALYSIS

**A. Plaintiff's Motion for Entry of Default Judgment.**

On July 29, 2009, Plaintiff filed a Motion for Default Judgment asserting that Defendant failed to file an answer to his Complaint within 20 of service of process. (# 24 at 1). On July 30, 2009, Defendant filed a Response in Opposition to Motion for Default Judgment (# 25). The Response indicates that, on July 23, 2009, Defendant filed a "Waiver of Reply and Motion to Dismiss." (Id. at 1). Defendant correctly asserts that 42 U.S.C. § 1997e(g)(1) allows a defendant to waive the right to reply to an action brought by a prisoner under section 1983. Furthermore, where a Motion to Dismiss is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a responsive pleading by a defendant is not required to be served or filed until 10 days after the disposition of the Motion to Dismiss. Fed. R. Civ. P. 12(a)(4). Defendant filed his Waiver of Reply and Motion to Dismiss within 20 days of being served with process, and no responsive pleading is due unless the court denies the Motion to Dismiss.

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). Where a defaulting

party has taken "reasonably prompt" action to cure the default and has asserted a meritorious defense, default judgments are not favored.  Prior to Plaintiff's filing of his Motion for Default Judgment, Defendant timely served and filed an appropriate response to the Complaint; thus Defendant is not in default.

Under these circumstances, the undersigned proposes that the presiding District Judge **FIND** that Defendant was and is not in default and that Plaintiff's Motion for Default Judgment is not warranted.  Thus, it is respectfully **RECOMMENDED** that the Motion for Default Judgment (# 24) be **DENIED**.

**B.    Defendant's Motion to Dismiss.**

Defendant has filed a Motion to Dismiss, asserting that Plaintiff's Complaint fails to state a claim upon which relief can be granted, and arguing that the Complaint should be dismissed pursuant to Rule 12(b)(6 of the Federal Rules of Civil Procedure. (# 22).  In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements

3

of a cause of action." Id. at 555.

The Supreme Court elucidated its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombley*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

As noted above, Plaintiff's Complaint challenges "as unconstitutionally vague as written" Disciplinary Rules 2.11 and 2.29. The Plaintiff requests that the court enter an Order "declaring Rule 2.11 and 2.29 as unconstitutionally vague as written, and order [the] commissioner to amend them in WVDOC Policy Directive 325.00." (# 1 at 5). Attached to Plaintiff's Complaint,

is a grievance document in which Plaintiff also asserted that both of these disciplinary rules are overbroad on their face. (Id. at 8-9). Because Plaintiff attached this document to his Complaint, the undersigned will construe Plaintiff's Complaint as challenging the disciplinary rules as being overbroad.

Following the filing of his Complaint, Plaintiff has filed numerous "Memoranda" which expand on his claims and cite to other sections of Policy Directive 325.00, dictionary definitions, and scripture verses. (## 2, 7, 8, 9, 12, 15 and 20). In some of these "Memoranda," Plaintiff asserts that the application of these disciplinary rules is interfering with inmates' First Amendment rights. As noted by Defendant, and as evidenced in the "Memoranda" filed by Plaintiff, it appears that Plaintiff is complaining that the disciplinary rules may interfere with his anticipated church or internet activities.[1] Plaintiff has not moved to amend his Complaint to allege any claim other than his claims that the disciplinary rules are vague and overbroad on their face; nor, as explained below, does it appear that any other claims that Plaintiff may be attempting to raise have been exhausted through the administrative remedy process, as required by 42 U.S.C. §

---

[1] It is apparent from documents filed in this action and others filed by Plaintiff that Plaintiff has expressed a desire to practice and minister on behalf of a religion he calls "Christian Prurient Faith." He has provided documentation indicating that he has been certified as a Minister of the "Universal Life Church."

5

1997e.

The Disciplinary Rules that are being challenged state as follows:

> Disciplinary Rule 2.11 - Contraband
>
> No inmate shall possess any contraband, whether in his/her possession or in his/her cell. Contraband shall include any item or substance not specifically permitted to be inmate property by institutional rules or any altered, permissible item or excess of permissible items. Contraband shall also include any permissible item not being used for its original intent. Inmates shall be held accountable for contraband items found in their living areas.

(# 22, Ex. 1, Policy Directive 325.00, § 2.11).

> Disciplinary Rule 2.29 - Unauthorized Entering into a Contract
>
> No inmate shall enter into any form of contract or be a party to such without the authorization of the Warden/Administrator or his/her designee including marriage, bank accounts, loans, post office boxes, etc.

(Id., § 2.29).

As noted by Defendant, Plaintiff's Complaint does not challenge these disciplinary policies as applied to any particular set of facts, and does not allege any facts concerning a particular application of Policy Directive 325.00 by defendant Rubenstein or the West Virginia Division of Corrections (the "WVDOC"). (# 23 at 2-3). Defendant also asserts that Plaintiff has only exhausted his claims on the issues of whether the disciplinary rules are unconstitutionally vague or overbroad on their face, and has not exhausted any claim he may be attempting to make concerning the application of either disciplinary rule to specific facts or

6

conduct by himself or the defendant. (Id. at 3, 13-18). Defendant specifically asserts that, to the extent that Plaintiff may be attempting to challenge the application of the disciplinary rules to his anticipated church or internet activities, such a claim or claims are unexhausted. (Id. at 13-18). Defendant states:

> In the present case, the defendant has searched its central office records for all of the plaintiff's grievances which have been filed pursuant to Policy Directive 335.00 and have been appealed to the commissioner of the West Virginia Division of Corrections. From January 2007 [footnote omitted] to July 2009, the plaintiff has appealed to the commissioner and consequently exhausted 27 separate grievances under Policy Directive 335.00. None of these grievances, however, raise any of the specific facts or requests which the plaintiff complains about in his various memoranda to-wit: incoming letters, using the internet to socialize, marrying inmates, carrying on other ministerial functions of the church ministry, having inmates join his church as members, setting up a church web-site, and setting up a church bank account. The March 15, 2009 grievance which was attached to the April 22, 2009 Complaint raised only a facial challenge to Disciplinary Rules 2.11 and 2.29. The grievance did not raise any facts or complaint about how these Disciplinary Rules were applied to him or any of the factual scenarios or complaints raised in his various memoranda.

(Id. at 14-15).

Based upon the evidence presented to this court, it appears that the only specific claim upon which Plaintiff has exhausted his administrative remedies is a facial challenge to the disciplinary rules, as stated in Plaintiff's Complaint, and not any claim concerning the actual application of those disciplinary rules to any particular circumstances, such as those addressed in some of the other documents filed by Plaintiff in support of his Complaint.

7

Thus, the undersigned proposes that the presiding District Judge **FIND** that the only exhausted claims upon which this court may rule are the claims that both of these disciplinary rules are unconstitutionally vague and overbroad on their face. Accordingly, the undersigned's analysis shall be limited to those claims.

Defendant's Motion to Dismiss has addressed whether each disciplinary rule is unconstitutionally vague or overbroad in separate sections. For ease of reference, the undersigned will address the constitutionality of each disciplinary rule in the same order as they are presented by Defendant in his motion.

**1. Disciplinary Rule 2.11 - Vagueness**

Defendant first contends that Disciplinary Rule 2.11 concerning contraband, as it is written, is not unconstitutionally vague. Defendant addresses the vagueness claim as follows:

> The general test for "vagueness" is whether a challenged provision, rule or statute would sufficiently place a person of ordinary intelligence on notice as to what conduct is forbidden. See <u>Connally v. General Constr. Co.</u>, 269 U.S. 385, 391, 46 S. Ct. 126, 127-28 (1926). However, where a provision, rule or statute is challenged on its face, as opposed to challenged as applied to a particular act or omission, it can only be stricken for vagueness "if it is impermissibly vague in all of its applications." <u>Ross v. Reed</u>, 719 F.2d 689, 693 (4th Cir. 1983), quoting <u>Hoffman Estates v. The Flipside, Hoffman Estates</u>, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982); see also <u>U.S. v. Salerno</u>, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987)(A facial challenge is the most difficult challenge to mount successfully, since the challenge must establish that no set of circumstances exists under which the provision, rule or statute would be valid).

(# 23 at 4). Defendant's Memorandum of Law further states:

It has been recognized in the United States Court of Appeals, Fourth Circuit, that in a "vagueness" claim involving prison discipline, deference to the legitimate needs of the prison facility should be given. Gaston v. Taylor, 918 F.2d 25, 29 (4th Cir. 1990), Meyers v. Alldredge, 492 F.2d 296 (3d Cir. 1974). By deference, the Meyers court wrote:

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumspection of an inmate's freedom to act, is essential to safe and efficient prison administration . . . As such, it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security.

Meyers v. Alldredge, 492 F.2d at 310.

(Id. at 5).

Defendant asserts that requiring greater specificity in Disciplinary Rule 2.11 "would prevent prison administrators from effectively addressing a wide area of potentially dangerous and unacceptable prison conduct and would be contrary to the deference provided in such matters." (Id. at 5-6). Defendant further contends that it is not feasible to specifically define what items are contraband, and that "based upon its changing security needs, items that are presently deemed permissible by a particular correctional institution may have to be prohibited and prohibited

in an expeditious manner." (<u>Id.</u> at 6).

> For example, a Warden may discover that an allowable item can be used or altered for impermissible activities. Conversely, a Warden may determine that an item desired by an inmate no longer presents a security issue and possession of such an item can be allowed. It is not feasible for the defendant, Commissioner Rubenstein, to re-write Policy Directive 325.00 every time one of the Wardens within the West Virginia Division of Corrections needs to prohibit or to allow possession of a particular item. Moreover, regarding the "alteration" provision of the disciplinary rule, a more restrictive or specific rule regarding altered or wrongly used items, would allow inmates to use/alter permissible property to undermine prison security as long as the inmate was sufficiently innovative enough to think of a use or alteration not specified in the written rule. Disciplinary Rule 2.11 cannot anticipate or list all the particular ways in which a permissible items can be altered or used in order to disrupt or undermine prison security. On the other hand, if an inmate desires to alter a permissible item of property, he can always seek pre-approval from the Warden or institution.

(<u>Id.</u>)

Defendant further asserts that Disciplinary Rule 2.11 is similar to the written terms of another disciplinary rule that was upheld by the Fourth Circuit in <u>Gaston v. Taylor</u>, 918 F.2d 25 (4th Cir. 1990), superseded in <u>Gaston v. Taylor</u>, 946 F.2d 340 (4th Cir. 1991)(en banc). In that case, the Court addressed a facial challenge to a prison disciplinary rule concerning the possession of contraband, which defined "contraband" as "anything not specifically approved for the specific inmate who has possession of the item." The Court found that this definition was not unconstitutionally vague, stating:

> We cannot say that the regulation is impermissibly vague on its face. Prison officials have a legitimate need to control the possessions of inmates, and it is not possible to list explicitly all items which are allowable. Switching the burden to require inmates only to possess approved items is a reasonable confinement procedure, provided that the inmates are given reasonably clear instruction as to what constitutes an approved item so that the regulation, as applied, is not impermissibly vague.

Gaston, 918 F.2d at 29. In the re-hearing en banc, Gaston conceded that the rule and definition of contraband were "sufficient to apprise any inmate of ordinary intelligence that possession of unapproved property is forbidden." Gaston, 946 F.2d at 342. Respondent urges a similar finding here. (# 23 at 6-7).

The undersigned proposes that the presiding District Judge **FIND** that Disciplinary Rule 2.11 is sufficient to apprise inmates of ordinary intelligence in the custody of the WVDOC that possession of any property that has not been specifically approved by the administration, any property that has been altered from its original form or intended use, or an excessive number of permissible items, constitutes "contraband," and is forbidden. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Disciplinary Rule 2.11 is not unconstitutionally vague, as written.

**2.   Disciplinary Rule 2.29 - Vagueness**

Using the same legal analysis, Defendant urges this court to find that Disciplinary Rule 2.29 concerning the unauthorized entry of contracts is not unconstitutionally vague as written. Defendant

also notes that, in his Complaint documents, Plaintiff erroneously quoted this disciplinary rule.  Plaintiff's Memorandum in support of his Complaint cited the rule as stating, "no inmate shall enter into any form of contract, ie marriage, bank accounts, loans, pen-pals, etc."  (# 2 at 2).  The undersigned will, of course, address the language of the disciplinary rule as it is actually written in Policy Directive 325.00, which is quoted above, rather than the mis-quotation by Plaintiff, notwithstanding the requirement of Rule 12(b)(6) to take the allegations in the Complaint in the light most favorable to Plaintiff.

> Defendant's Memorandum of Law further states:
>
> A "contract" is generally understood by people of ordinary intelligence as an enforceable agreement between two or more parties.  Indeed, in his June 19, 2009 "Memorandum"/Document # 9, the plaintiff acknowledges this general understanding and cites [] a definition of contract "broadly, any legally enforceable promise: in its usual sense of an agreement among two or more persons or entities, whereby at least one of them promises to do (or not to do) something in exchange for something done or promised by the others.  A document embodying such an aggreement [sic; agreement]."
>
> The plaintiff cannot show that Disciplinary Rule 2.29 is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."  FN. 7, <u>Hoffman</u>, 455 U.S. at 495, 102 S. Ct. at 1191.  Regarding Disciplinary Rule 2.29, there is a core set of conduct, entering into a contract, which would be clearly understood by an inmate of ordinary intelligence as prohibited.  The plaintiff's June 19, 2009 "Memorandum"/Document # 9 demonstrates he, too, understands the core conduct which is forbidden.  At best, the plaintiff argues for a strained possible interpretation of Disciplinary Rule 2.29 in which almost

> all conduct is a contract. However, contrary to plaintiff LaRue's claim in his March 19, 2009 grievance challenging the constitutionality of Disciplinary Rule 2.11 and 2.29, an inmate of ordinary intelligence would not think that writing a "letter" was the same thing as entering into a "contract." While there may be some debate regarding whether a particular act would constitute a "contract," such debate would be a challenge to Disciplinary Rule 2.29 as applied, and not as written.

(# 23 at 8).

The undersigned proposes that the presiding District Judge **FIND** that Disciplinary Rule 2.29 is sufficient to apprise inmates of ordinary intelligence in the custody of the WVDOC of what a "contract" means under the rule, and that writing an ordinary letter, that does not obligate one party to do, or not to do something, in exchange for something done or promised, is not a "contract." Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Disciplinary Rule 2.29 is not unconstitutionally vague, as written.

### 3. Disciplinary Rule 2.11 - Overbreadth

Although not specifically pled in his Complaint, the grievance attached to Plaintiff's Complaint documents also attacked both of the cited disciplinary rules as being overbroad on their face. Defendant addresses the legal authority applicable to an overbreadth challenge in his Memorandum of Law as follows:

> A challenge that a provision, rule or statute is unconstitutionally overbroad is applied only in the limited context of the First Amendment. See <u>Salerno</u>, 481 U.S. at 745, 107 S. Ct. at 2400; <u>Hodel v. Irving</u>, 481 U.S. 704, 107 S. Ct. 2076 (1987). An overbreadth challenge is an exception to the legal standards for

13

other facial challenges and unlike a vagueness challenge, the plaintiff need not show that the provision, rule or statute is invalid in all its applications in order to prevail. As a general matter, for a provision, rule or statute to be stricken for overbreadth in the context of the First Amendment, it "must reach a substantial amount of constitutionally protected conduct." Ross, 719 F.2d at 693. By substantial, Federal Courts have insisted that a provision's, rule's or statute's "overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." U.S. v. Williams, -- U.S. --, 128 S. Ct. 1830, 1839 (2008), see also Virginia v. Hicks, 539 U.S. 113, 120, 123 S. Ct. 2191, 2197 (2003).

Like a vagueness challenge, it has been noted that the "overbreadth doctrine" is limited when applied to prisons. Koutnik v. Brown, 456 F.3d 777, 783 (7th Cir. 2006), Vester v. Rogers, 795 F.2d 1179, 1182-83 (1986)(If "the rule operates only as a limitation on a prisoner's first amendment rights, then the judicial deference normally accorded prison officials will in most cases defeat a claim of overbreadth. The Court's inquiry is directed not toward whether the state has demonstrated an absence of less restrictive alternatives but whether the inmate challenging the regulation has shown by substantial evidence that the state has exaggerated its response to an institutional problem.") Inside prison, the robust and potentially anarchic exchange of ideas so valued by the First Amendment is tempered by the need to maintain order and safety in a prison setting that is inherently violent and dangerous. Inside prison, an inmate's freedoms and rights are curtailed - and a rule or regulation even when it impinges on a constitutional right will be upheld if it is reasonably related to a legitimate penological purpose. Turner v. Safely, 482 U.S. 78, 107 S. Ct. 2254 (1987). This curtailment is true of an inmate's First Amendment rights, which otherwise might be implicated in an "overbreadth" challenge. See Shaw v. Murphy, 532 U.S. 223, 229, 121 S. Ct. 1475, 1479 (2001)("We nonetheless have maintained that the constitutional rights the prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system.").

(# 23 at 9-10).

Defendant notes that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." Hicks, 539 U.S. at 124, 123 S. Ct. at 2199. (Id. at 10-11 n.8). Defendant further asserts that limitations and prohibitions on an inmate's possessions while in prison may properly exist as part of the "punishment" of a prison sentence. See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981), and, moreover, restrictions on an inmate's right to possess and use personal property inside a prison are appropriate where the restriction is reasonably related to a legitimate penological purpose. (Id.) Defendant adds:

> This is true even where the property, in and of itself, does not pose a threat to security. For example, limitations on the amount of property and types/models of property may exist due to the limited space of inmate housing or to make it easier for officers to distinguish between allowable property and contraband. The restriction of all types of property inside prison and the enforcement of the restriction is well within the scope of a prison sentence and, here, Disciplinary Rule 2.11's intended "sweep" or prohibited core conduct is in an area of traditional prison management which would not reach an inmate's constitutionally protected conduct.

(Id.) Defendant contends that Plaintiff has not alleged any particular activity protected by the First Amendment which is substantially curtailed by the written terms of Disciplinary Rule 2.11. (Id. at 11-12).

15

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not demonstrated that Disciplinary Rule 2.211 concerning contraband reaches a substantial amount of constitutionally protected conduct, and therefore, it is not constitutionally overbroad. This disciplinary rule is reasonably related to legitimate penological purposes, such as security and appropriate use of limited space, and the state has not exaggerated its response to these institutional problems.

**4. Disciplinary Rule 2.29 - Overbreadth**

As noted by Defendant, Disciplinary Rule 2.29 does not forbid an inmate from entering into any form of contract; an inmate may seek approval of the Warden or his designee for entry into a particular contract. Defendant states, "[p]resumably whenever the contract in question is necessary for the exercise of an inmate's constitutional right or freedom, approval will be granted unless there is legitimate penological reason to deny the request." (# 23 at 12). Plaintiff has not alleged that he sought specific approval for any of the activities he mentions in his "Memoranda," or to the extent that Plaintiff were to seek such approval, Defendant asserts that "there may be ample legitimate penological reasons to deny the plaintiff permission to enter into a particular contract" given Plaintiff's disciplinary history. (Id. at 12-13). That is not a matter before this court at this time.

The undersigned proposes that the presiding District Judge **FIND** that Disciplinary Rule 2.29, on its face, does not reach or curtail "a substantial amount of constitutionally protected conduct" and, thus, is not constitutionally overbroad.

### **RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint and related documents fail to state a claim upon which relief can be granted.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (# 22) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

    November 24, 2009
           Date

Mary E. Stanley
United States Magistrate Judge